**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY

```
                              :
JOHN SEGURA,                  :
                              :  CIVIL ACTION NO. 11-6188 (MLC)
      Plaintiff,              :
                              :      MEMORANDUM OPINION
      v.                      :
                              :
DR. REDDY'S LABORATORIES, INC.,:
                              :
      Defendant.              :
_____:
```

**COOPER, District Judge**

Plaintiff, John Segura, brings this action against Defendant, Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's"), alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., with respect to Dr. Reddy's 401(k) Profit Sharing Plan ("the Plan"). (See dkt. entry no. 16, Am. Compl.)

Dr. Reddy's now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (See dkt. entry no. 20, Mot. to Dismiss ("the Motion").)[1]  Segura opposes the Motion.  (See generally Pl.'s Opp'n Br.)

---

[1] The Amended Complaint asserts state law claims against Dr. Reddy's for breach of contract and breach of fiduciary duty; Segura seeks common law damages against Dr. Reddy's in addition to the remedies provided for by ERISA.  (See Am. Compl. at ¶¶ 40-46.)  Dr. Reddy's argued, in support of the Motion, that Segura's state law claims and requests for common law damages are preempted by ERISA.  (See dkt. entry no. 20-1, Def.'s Br. in Supp. of Mot. at 22-25 ("Def.'s Br.").)  In his opposition papers, Segura concedes that the state and common law claims are

The Court resolves the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b).  For the reasons stated below, the Court will deny the Motion in part and grant the Motion in part.

## BACKGROUND[2]

Segura was a long-time employee of Dr. Reddy's.  (See Am. Compl. at ¶ 6.)  Segura, during his employment with Dr. Reddy's, was a participant and beneficiary of the Plan; Dr. Reddy's administered the Plan.  (Id. at ¶¶ 10-15.)  The Plan's Trustee was Capital Bank and Trust Company, known by Segura as American Funds ("Plan Trustee").  (Id. at ¶ 13.)

Segura's employment with Dr. Reddy's terminated on June 30, 2011, at which point the parties entered into a Confidential Separation Agreement and General Release ("Separation Agreement").  (Id. at ¶¶ 7-8.)  Segura continued to provide services to Dr. Reddy's, however, from July 1, 2011, until

---

preempted by ERISA and asks the Court to dismiss those counts relating to state law claims and punitive damages.  (See dkt. entry no. 22, Pl.'s Opp'n Br. to Def.'s Mot. at 23-24. ("Pl.'s Opp'n Br.").)  Thus, the Court will dismiss those counts without addressing preemption as a ground for dismissal, and will examine the only count remaining in the Amended Complaint under the standard for a motion to dismiss.

[2] The facts set forth in the Background section have been taken from the Amended Complaint.  On this Motion, the Court will accept the factual allegations in the Amended Complaint as true and construe all facts in Segura's favor.

October 7, 2011, as an independent contractor employed by Klein Hersh International ("Klein Hersh").  (See id. at ¶ 9.)

Segura informed the Plan Trustee of his desire to roll his 401(k) monies into an Individual Retirement Account ("IRA") on July 27, 2011.  (See id. at ¶¶ 18.)  Segura wished to accomplish this process by August 2, 2011, for financial strategy reasons; after speaking with the Plan Trustee, Segura was satisfied that there was time to do so.  (See id. at ¶¶ 19-21.)  By July 29, 2011, Segura had sent Dr. Reddy's the documents it needed to initiate the roll-over process.  (See id. at ¶¶ 18-23.)  Dr. Reddy's sent Segura a letter on August 9, 2011, stating that it would not authorize Segura's 401(k) disbursement because Segura was still providing services to Dr. Reddy's through Klein Hersh, and therefore did not qualify for a 401(k) distribution.  (See id. at ¶ 27.)

Segura remained in contact with Dr. Reddy's from August 9, 2011, until October 7, 2011, regarding the status of his request for distribution from his 401(k) account.  (See id. at ¶ 26.) Dr. Reddy's sent another letter on August 23, 2011, confirming that its position remained that Segura could not receive a distribution because of his role as an independent contractor to Dr. Reddy's.  (See id. at ¶ 27.)  Segura's 401(k) account lost in excess of $25,000 in value between July 27, 2011 and October 7, 2011.  (See id. at ¶ 29.)

3

Segura requested disbursement of his 401(k) funds once again from Dr. Reddy's after October 7, 2011, when his consulting agreement with Dr. Reddy's terminated.  (See id. at ¶ 31.)  Dr. Reddy's sent Segura a letter on November 8, 2011, which stated that he was now eligible for a distribution following termination of his services to Dr. Reddy's through Klein Hersh.  (See id. at ¶ 32.)  The letter also stated that his request had been denied previously due to his status as a "leased employee" providing services to Dr. Reddy's.  (Id. at ¶ 33.)  The letter also included sections of the Plan; this was the first time that Segura received any Plan documents from Dr. Reddy's.  (See id. at ¶ 34.)

Segura requested several Plan documents from Dr. Reddy's at different times.  (See id. at ¶ 25.)  On August 9, 2011, Segura requested a copy of the Plan from Dr. Reddy's.  (See id.)  Segura received a summary of the Plan from Dr. Reddy's on November 9, 2011.  (See id.)  He did not receive a copy of the Plan until December 23, 2011, after his third request on November 21, 2011.  (See id.)

Segura resubmitted his July 27, 2011 request to Dr. Reddy's and his IRA holder on November 21, 2011.  (See id. at ¶ 35.)  The requested funds from the 401(k) account were disbursed to the IRA on December 2, 2011.  (See id. at ¶ 36.)

4

**DISCUSSION**

**I.    12(b)(6) Motion to Dismiss Standard**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Rule 8(a)(2)).

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are

5

based upon those documents.  See Pension Benefit Guar. Corp. v.
White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  The
Court can consider such documents without violating Rule
12(b)(6)'s requirement that a motion to dismiss be converted to
a summary judgment motion if a court considers matters outside
the pleadings.  Id.  "The reason that a court must convert a
motion to dismiss to a summary judgment motion if it considers
extraneous evidence submitted by the defense is to afford the
plaintiff an opportunity to respond."  Id.  The danger of
converting motions to dismiss into motions for summary judgment
lies in defendants preemptively defeating complaints with
documents still unknown to plaintiffs through proper discovery.
Id. at 1196-98.  "When a complaint relies on a document,
however, the plaintiff obviously is on notice of the contents of
the document, and the need for a chance to refute evidence is
greatly diminished."  Id. at 1196-97.

     The Amended Complaint references the Plan extensively, and
indeed Segura's cause of action is predicated on the rights and
obligations conferred on beneficiaries by their participation in
that contract.  (See generally Am. Compl. at ¶¶ 10-16, 18-31.)
Thus, this document, although not physically incorporated in the
Amended Complaint, may be considered by the Court in deciding
the Motion, so long as it is undisputedly authentic.  Pension
Benefit, 998 F.2d at 1196.  In his opposition brief, Segura did

6

not contest Dr. Reddy's reliance on the Plan as furnished with
the brief in support of the Motion.  (See generally Pl.'s Opp'n
Br. at 2-15.)  Accordingly, the Court will examine the terms of
the Plan where necessary in deciding the Motion.

## II.  Analysis

The Amended Complaint contains one count alleging breach of
fiduciary duty due to several failures on the part of Dr.
Reddy's, which Segura claims were in violation of 29 U.S.C. §§
1132(a)(1)(B), 1132(a)(2), and 1132(c)(1)(B).  (See Am. Compl.
at ¶ 39.)  Segura alleges that Dr. Reddy's breached the
fiduciary duty it owed him as a Plan participant by failing to
authorize the requested distributions in July 2011.  (See id. at
¶¶ 37, 39.)  Segura also alleges that Dr. Reddy's breached its
fiduciary duty by failing to provide him with Plan documents
upon request in August 2011, or with the Plan provisions on
which Dr. Reddy's based its denial of Segura's July 2011 request
for the 401(k) disbursement.  (See id. at ¶ 39.)

Dr. Reddy's argues that Segura fails to state a claim
because the Plan did not permit disbursements unless the
employee experienced a separation, which did not include when an
employee became a "leased employee."  (See Def.'s Br. at 1, 16,
18.)  Dr. Reddy's also argues that Segura has not stated a claim
under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c) because claims for
breach of fiduciary duty can only be brought under 29 U.S.C. §

1132(a)(2).   (See id. at 1, 4-7.)   Dr. Reddy's further argues
that Segura's claim for breach of fiduciary duty under 29 U.S.C.
§ 1132(a)(2) must be dismissed because, before October 7, 2011,
Segura was providing services to Dr. Reddy's and was therefore
not eligible for a 401(k) distribution.   (See id. at 9-13, 21-
22.)

     A claim under ERISA for breach of fiduciary duty requires
proof that "(1) the defendant was acting in a fiduciary
capacity; (2) the defendant made affirmative misrepresentations
or failed to adequately inform plan participants and
beneficiaries; (3) the misrepresentation or inadequate
disclosure was material; and (4) the plaintiff detrimentally
relied on the misrepresentation or inadequate disclosure."
Shook v. Avaya, Inc., 625 F.3d 69, 73 (3d Cir. 2010) (internal
quotations and citation omitted).   ERISA does not expressly
enumerate the particular duties of a fiduciary, but rather
relies on the common law of trusts to define the general scope
of a fiduciary's responsibilities.   Wachtel v. Health Net, Inc.,
482 F.3d 225, 233 (3d Cir. 2007).   A person is a fiduciary with
respect to an ERISA plan "to the extent (i) he exercises any
discretionary authority or discretional control respecting
management of such plan or exercises any authority or control
respecting management or disposition of its assets, . . . or
(iii) he has any discretionary authority or discretionary

8

responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The Court will examine each of the alleged breaches of fiduciary duty under the standard for a motion to dismiss.

### A.    Failure to Disburse Funds upon Request

Segura alleges that Dr. Reddy's failure to disburse his funds from the Plan constitutes a violation of 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2).  (See Am. Compl. at ¶¶ 38-39.) ERISA provides in pertinent part:

> A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed de novo "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010) (internal citations omitted).  When the administrator is accorded some discretionary authority under the plan, however, the denial of benefits is reviewed only for abuse of discretion.  See id.  Thus, an administrator's decision will be overturned only if it is shown that the denial of benefits was "without reason, unsupported by substantial evidence or

erroneous as a matter of law." Id. (internal citations omitted).

ERISA also provides for a cause of action in the event of a breach of fiduciary duty: "A civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]." 29 U.S.C. § 1132(a)(2). Section 1109 provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.

Dr. Reddy's argues that the Amended Complaint lacks sufficient factual allegations to support Segura's claim that denial of the requested disbursement in July 2011 was arbitrary, capricious, or manifestly mistaken. (See Def.'s Br. at 13-15.) Dr. Reddy's also argues that 29 U.S.C. § 1132(a)(1)(B) is not available for a claim for breach of fiduciary duty. (See id. at 16.)

Segura argues in response that the terms of the Plan required Dr. Reddy's to disburse the funds in his 401(k) account when he requested it. (See Pl.'s Opp'n Br. at 8-12.) Moreover,

Segura responds that the Amended Complaint adequately pleads facts that, taken as true, would establish a breach of fiduciary duty.  (See id. at 16-17.)  Segura also argues that Rule 8(a) permits liberal alternative pleading that does not preclude duplicative claims for breach of fiduciary duty, wrongful denial of benefits, and non-disclosure of documents.  (See id. at 18-19.)

Before determining whether the failure to disburse funds when requested was a breach of fiduciary duty, it is necessary to determine whether Segura was eligible for disbursement of funds on July 27, 2011, when he made the request.  The Plan allows disbursements upon a participant's "Separation from Service," death, or exercise of an In-Service Distribution right.  (See dkt. entry no. 20-2, Decl. of Clifford Katz, Ex. 2, The Plan, at Section 6.01.)  Segura pleaded in the Amended Complaint that he experienced a separation event that terminated his employment with Dr. Reddy's on June 30, 2011, prior to his request for a distribution.  (See Am. Compl. at ¶¶ 6-8, 17, 20.)

Dr. Reddy's has argued that several other sections of the Plan made Segura ineligible for a distribution.  (See Def.'s Br. at 3-7.)  Dr. Reddy's argues that the definitions of "Employee," "Leased Employee," and "Separation from Service/Severance from Employment," when read together, demonstrate that Dr. Reddy's decision as plan administrator was neither arbitrary nor

11

capricious and thus does not constitute a breach of fiduciary
duty.  (See id.)  In addition, Dr. Reddy's relies on language
from a letter and leasing agreement that were provided with its
moving papers.  (See id. at 3.)  Finally, Dr. Reddy's also
relies on a comment in regulations promulgated by the Internal
Revenue Service ("IRS"), which addresses one type of change in
employee status.  (See id. at 15.)

An "Employee" is defined in the Plan as "any common law
employee, Self-Employed Individual, Leased Employee or other
person the Code treats as an employee of the Employer for the
purposes of the Employer's qualified plan.  An Employee is
either an Eligible Employee or an Excluded Employee."  (See
Decl. of Clifford Katz, Ex. 2, The Plan, at Section 1.21.)  The
Plan defines "Leased Employees" as follows:

> Leased Employee means an individual (who otherwise is
> not an Employee of the Employer) who, pursuant to an
> agreement between the Employer and any other person
> (the "leasing organization"), has performed services
> for the Employer (or for the Employer and any persons
> related to the Employer within the meaning of Code
> §144(a)(3)) on a substantially full-time basis for at
> least one year and who performs such services under
> primary direction or control of the Employer within
> the meaning of Code §414(n)(2).  Except as described
> in Section 1.21(b)(1), a Leased Employee is an
> Employee for purposes of the Plan.  However, under a
> Nonstandardized Plan or under a Volume Submitter Plan,
> a Leased Employee is an Excluded Employee unless the
> Employer in Appendix B elects not to treat Leased
> Employees as Excluded Employees as to any or all
> Contribution Types.

(See id. at Section 1.21(B).)  The Plan defines "Separation from Service/Severance from Employment" as "an event after which the Employee no longer has an employment relationship with the Employer maintaining this Plan or with a Related Employer." (See id. at Section 1.55.)  Dr. Reddy's also relies on statements by the IRS regarding leased employee status in 2004:

> Comments were requested on whether a change in status from a common law employee to a leased employee described in section 414(n) should be treated as a severance from employment that would permit a distribution to be made. After reviewing the comments, these final regulations do not add the change to leased employee to the list of distributable events and retain the use of the section 410(b) definition of employee for purposes of section 401(k). Because an individual who is a leased employee (as defined in section 414(n)) is treated as an employee of the recipient of the individual's services for purposes of section 410(b) (unless the safe harbor plan requirements described in section 414(n)(5) are met), the individual does not incur a severance from employment as a result of becoming a leased employee.

Retirement Plans, 69 Fed.Reg. 78144, 78148 (Dec. 29, 2004) (to be codified at 26 C.F.R. pts. 1 and 601).

From these, Dr. Reddy's argues that Segura did not experience a Separation from Service, as defined by the Plan, that would make him eligible for a disbursement.  (See Def.'s Br. at 3-5.)  Dr. Reddy's bases this argument on the continued relationship between the parties between July and October of 2011, which Segura characterizes as that of an independent contractor and unassociated business, not as an employee and

13

employer relationship.  (See id.; see also Pl.'s Opp'n Br. at 8-
13.)  Dr. Reddy's also relies on the leasing agreement for the
proposition that it retained a degree of control over Segura
such as an employer would have over an employee.  (See Def.'s
Br. at 4-5.)  Drawing on the language in the Federal Register,
Dr. Reddy's concludes that the explicit language concerning a
non-qualifying change in status from common law employee to
leased employee would similarly prohibit a disbursement when the
change in status was from employee to leased employee.  (See id.
at 15.)

    Segura responds that his employment with Dr. Reddy's ended
on June 30, 2011, as was pleaded in the Amended Complaint.  (See
Pl.'s Opp'n Br. at 3; see also Am. Compl at ¶¶ 7-8.)  Segura
argues that this qualifies as a separation event under the Plan,
notwithstanding his continued relationship with Dr. Reddy's as
an independent contractor between July 2011 and October 2011.
(See Pl.'s Opp'n Br. at 8-10.)  Segura also argues that even if
such a relationship made him a "Leased Employee" under the Plan,
the Plan documents show that this status is excluded from
participation in the Plan and thus he would remain eligible for
a distribution.  (See id. at 13-16.)  Segura supports this
argument by referring to language in the Summary Plan

14

Description, as well as his Separation Agreement with Dr.
Reddy's from June 30, 2011.  (See id. at 10-15.)[3]

     The Court will not determine Segura's employment status
when deciding the Motion.  The parties both seek to introduce
factual material beyond the face of the Amended Complaint in
order to support their respective positions.  (See Pl.'s Opp'n
Br. at 10-13; see also Def.'s Br. at 4-5.)  Segura points to
language in the Separation Agreement that terminates his
employee benefits as an indication of his separation event.
(See Pl.'s Opp'n Br. at 12.)  Dr. Reddy's seeks to disprove the
factual allegation of employment status in the Amended Complaint
by way of control language in the leasing agreement with Klein
Hersh.  (See Def.'s Br. at 4-5.)  These pieces of evidence will
not be considered when resolving this Motion.  Such extraneous
documents may not be used to resolve factual disputes between
the parties upon a motion to dismiss; rather, allegations in the
complaint are taken as true and the totality of the complaint is
weighed to see if the plaintiff has stated a claim under the
applicable law.  See Phillips, 515 F.3d at 233.

     The letter and staffing agreement exchanged between Dr.
Reddy's and Klein Hersh addresses Segura's relationship with the
two entities.  (See Def.'s Br. at 3, 8.)  Dr. Reddy's does not

---

[3] Neither of these documents was attached to the Amended
Complaint.

15

demonstrate that this material was integrally incorporated in Segura's Amended Complaint, but merely notes that "Plaintiff alleges that 'Between July 1, 2011 and October 7, 2011, Segura served as an independent contractor to Dr. Reddy's through Klein Hers[]h International.' (Amended Complaint, ¶ 9). Therefore, the letter and Staffing Agreement may properly be considered on this Motion to Dismiss." (Def.'s Br. at 3, n.4.) The Court is not persuaded that Segura's tangential reference to his employment at Klein Hersh is sufficient for the Court to consider a private contract between Klein Hersh and Dr. Reddy's on a motion to dismiss. This inference is particularly inappropriate where Dr. Reddy's has not established that Segura was a party to that agreement, or had any prior notice of its contents. Thus, the letter and staffing agreement are not properly before the Court for the purposes of this Motion and will not be considered.

Taking Segura's factual allegation of his status as an independent contractor as true for the purposes of the Motion, the terms of the Plan would require disbursement of his funds upon request.[4] Thus, Segura argues that Dr. Reddy's failure to disburse his funds when the Plan so required qualifies as a

---

[4] The documents beyond the scope of the Amended Complaint may not be considered, and the IRS regulations do not encompass a situation, as here, where a separation event allegedly occurs between the different employee and leased employee statuses. See Retirement Plans, 69 Fed.Reg. at 78148.

misrepresentation or omission that allows him to proceed with
the breach of fiduciary duty claim.  (See Pl.'s Opp'n Br. at 16-
17.)  Under the elements listed in Shook, Segura must plead that
(1) Dr. Reddy's was acting in a fiduciary capacity; (2) Dr.
Reddy's made an affirmative misrepresentation or omitted
information in its communications with Segura; (3) the
misrepresentation or omission was material; and (4) Segura
detrimentally relied on the misrepresentation or omission.  See
Shook, 625 F.3d at 73.  The second and third elements are
intertwined: "Determining whether a misrepresentation or
inadequate disclosure bears a substantial likelihood of
misleading a reasonable employee may involve examining whether
the fiduciary, as an objective matter, knew or should have known
that a beneficiary would be confused by the statement or
omission."  Unisys Corp. Retiree Med. Benefits ERISA Litig. v.
Unisys Corp., 579 F.3d 220, 228-29 (3d Cir. 2009) (internal
citation and quotation omitted).  If the required elements can
be found in the Amended Complaint, construing all inferences in
favor of Segura, then the Motion will be denied with respect to
this claim.

     Segura pleaded that Dr. Reddy's owed him fiduciary duties
in Dr. Reddy's capacity as the Plan Administrator.  (See Am.
Compl. at ¶¶ 11-12, 44-46.)  Segura claims that Dr. Reddy's
informed him that he was not eligible for a disbursement under

17

the terms of the Plan and then failed to inform him of the
applicable terms.  (See id. at ¶¶ 24, 25, 28.)  Segura pleaded
that this misrepresentation (regarding his employment status)
resulted in his funds being inaccessible for four months and
that the failure to provide him with the basis for the refusal
left him unable to contest Dr. Reddy's conduct.  (See id. at ¶¶
27-31, 37.)  Finally, Segura pleaded that the refusal to
disburse his funds from the 401(k) account over that period
ultimately resulted in a loss of almost $25,000.  (See id. at ¶¶
29, 36, 37.)

        The Amended Complaint contains allegations that satisfy the
first element, namely that Dr. Reddy's acted in a fiduciary
capacity as the Plan Administrator.  See Varity Corp. v. Howe,
516 U.S. 489, 527 (1996) ("a person is a fiduciary with respect
to a plan only to the extent that he has any discretionary
authority or discretionary responsibility in the administration
of such plan") (internal quotation marks omitted).  The final
element is also satisfied with allegations that Segura was
unable to access his funds and the amount in the account
depreciated by $25,000 over the period those funds were
inaccessible due to Segura's reliance on Dr. Reddy's
determination.  See Unisys Corp., 579 F.3d at 229 ("detrimental
reliance is not limited to the retirement decision alone; rather
it may encompass decisions to decline other employment

18

opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement"). (See Am. Compl. at ¶¶ 26-29.)

The second and third elements, requiring a material misrepresentation or omission, are also present in the allegations contained in the Amended Complaint. Segura has presented a narrative wherein his employment with Dr. Reddy's was terminated and he began working for another company. (See Am. Compl. at ¶¶ 6-9.) Yet when he sought to claim benefits under the Plan, his request was denied because Dr. Reddy's informed him that he was still an employee under the Plan. (See id. at ¶¶ 24, 27, 32.) Accordingly, asking under Unisys Corp. "whether the fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused by the statement or omission," the Court resolves this question in favor of Segura: a beneficiary would be confused to have signed a Separation Agreement but still be considered an employee of the company. Segura has pleaded that Dr. Reddy's made a material misrepresentation or omission, satisfying all four of the required elements for a breach of fiduciary duty claim.

Dr. Reddy's has not persuaded the Court that the claim for breach of fiduciary duty in failing to disburse the funds should be dismissed for failure to state a claim under 29 U.S.C. §

19

1132(a)(2).  Accordingly, the Motion will be denied with respect
to the claim brought under that provision of the statute.

Dr. Reddy's also argues that 29 U.S.C. § 1132(a)(1)(B) is
not available for a claim for breach of fiduciary duty.  (See
Def.'s Br. at 16-18.)  At this early stage in the litigation,
however, a complaint pleading both wrongful denial of benefits
and breach of fiduciary duty is not duplicative, nor does it
require that the Court strike one claim to uphold the other.
See Koert v. G.E. Grp. Life Assur. Co., No. 04-5745, 2005 WL
1655888, at *3 (E.D. Pa. July 14, 2005) (denying motion to
dismiss dual claims for wrongful denial of benefits and breach
of fiduciary duty); see also Tannenbaum v. UNUM Life Ins. Co. of
Am., No. 03-1410, 2004 WL 1084658, at *4 (E.D. Pa. Feb. 27,
2004) (denying motion to dismiss claims for both wrongful denial
of benefits and equitable relief because "at this stage, we
cannot know whether Plaintiff will be able to prove his
entitlement to benefits under § 1132(a)(1)(B)").

Segura alleged that Dr. Reddy's administers the Plan, that
he requested a distribution he was entitled to, that his request
was denied by Dr. Reddy's, and that the denial resulted in
Segura's 401(k) account losing value.  (See Am. Compl. at ¶¶ 12,
18, 21-24, 27, 29, 41, 45.)  The portion of Count I brought
under 29 U.S.C. § 1132(a)(1)(B) will remain as Segura has
pleaded sufficient facts to demonstrate a wrongful denial of

benefits under the terms of the Plan, resulting in harm to
Segura.  (See Am. Compl. at ¶¶ 29, 39, 41, 46.)

Although styled as a claim for breach of fiduciary duty,
Segura has pleaded his claim under the statute pertaining to a
wrongful denial of benefits and he has alleged facts that, if
true, support such a claim.  While a clearer complaint would
separate the count into its distinct claims, under the
applicable standard, Segura's claims under 29 U.S.C. §§
1132(a)(1)(B) and 1132(a)(2) will withstand the Motion.

The Motion will be denied as it relates to the failure to
disburse the requested funds.

**B.   Failure to Provide Plan Documents**

ERISA works to ensure the provision of plan documents to
participants and beneficiaries by exacting penalties from those
administrators who fail or refuse to supply requested
information.  See 29 U.S.C. § 1132(c).  The pertinent section
states:

> Any administrator . . . who fails or refuses to comply
> with a request for any information which such
> administrator is required by this title to furnish to
> a participant or beneficiary (unless such failure or
> refusal results from matters reasonably beyond the
> control of the administrator) by mailing the material
> requested to the last known address of the requesting
> participant or beneficiary within 30 days after such
> request may in the court's discretion be personally
> liable to such participant or beneficiary in the
> amount of up to $ 100 a day from the date of such
> failure or refusal, and the court may in its
> discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).  To state a claim for relief under
this provision, a plaintiff must allege that (1) he is a plan
participant or beneficiary; (2) he has made a request of a plan
administrator for information that falls within the purview of
ERISA's disclosure requirements; and (3) the plan administrator
failed to provide the requested documents within thirty days of
the request.  See 29 U.S.C. § 1132(c)(1)(B).

　　Segura has pleaded that he was a participant and
beneficiary of the Plan.  (See Am. Compl. at ¶¶ 14, 15.)  Segura
has pleaded that Dr. Reddy's serves as the Plan Administrator
and that he requested information from Dr. Reddy's on August 9,
2011, after his requested disbursement was denied.  (See id. at
¶¶ 12, 24-25.)  Segura has also pleaded that the documents he
requested were not provided until more than thirty days after
his request was made.  (See id. at ¶¶ 24-25, 28, 34.)  The one
remaining element is whether Segura requested "information which
such administrator is required by this title to furnish to a
participant or beneficiary," or information that falls within
the scope of ERISA's disclosure requirements.  See 29 U.S.C. §
1132(c)(1)(B).

　　In his opposition papers, Segura points to three sections
of ERISA that require plan administrators to provide documents
upon a beneficiary's request: 29 U.S.C. § 1133(1), 29 U.S.C. §

22

1024(b)(1), and 29 U.S.C. § 1024(b)(4).  (See Pl.'s Opp'n Br. at 20-23.)  Under the first provision, ERISA requires that "every employee benefit plan shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).

Segura also claims that Dr. Reddy's violated 29 U.S.C. § 1024(b)(1) and 29 U.S.C. § 1024(b)(4).  The first provision relates to the summary plan description document:

> The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 102(a)--
>      (A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
>      (B) if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b)(1).  The final provision is the only one to require a written request for information before the plan administrator must provide documentation: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other

instruments under which the plan is established or operated."
29 U.S.C. § 1024(b)(4).

Dr. Reddy's argues that the claim should be dismissed
because the Amended Complaint fails to allege which documents
were specifically requested.  (See Def.'s Br. at 18-19.)  The
Amended Complaint, however, refers to several documents that Dr.
Reddy's was obligated to provide to Segura.  (See, e.g., Am.
Compl. at ¶ 28 (noting the first failure to provide claims
dispute procedures or a reason for the denial of benefits); id.
at ¶ 34 (noting the first instance when Segura received any Plan
documents).)  A copy of the Plan was requested, Dr. Reddy's was
obligated to provide certain Plan documents when Segura first
became a beneficiary, and Dr. Reddy's also was obligated to
provide Segura with an explanation for why his request was
denied and a description of how he could contest that decision.
(See id. at ¶¶ 24-26, 28, 34, 39.)

Dr. Reddy's also argues that the claim should be dismissed
because Segura did not plead which sections of ERISA would
require Dr. Reddy's to provide the requested documents.  (See
Def.'s Br. at 18-19.)  Dr. Reddy's is correct; Segura failed to
include in his allegations a specific identification of what
ERISA sections relate to the requested information.  See Markert
v. PNC Fin. Servs. Grp., 828 F.Supp.2d 765, 781 (E.D. Pa. 2011)
(dismissing claim because "[p]laintiffs fail to identify the

corresponding provision within the statute that relates to the [information] which they requested"). Moreover, Segura failed to plead that he made a written request for the Summary Plan Description, which is required under 29 U.S.C. § 1024(b)(4). See 29 U.S.C. § 1024(b)(4) ("upon written request of any participant"). Accordingly, the claim under 29 U.S.C. § 1132(c)(1) will be dismissed without prejudice for failure to identify the provisions of ERISA that require the information sought to be provided and for failure to specify that a written request was made of Dr. Reddy's regarding the Summary Plan Description. Should Segura seek to revive those portions of the Amended Complaint which are dismissed for failure to state a claim, he may do so upon leave from the Magistrate Judge.

## CONCLUSION

For the reasons stated supra, the Court will grant Defendant's motion to dismiss in part and deny it in part. The Court will issue an appropriate Order and Judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: December 20, 2012

25